UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAURAE CANADY,

                Petitioner,                      Case Number: 19-11841
                                                  Honorable David M. Lawson

v.

SHAWN BREWER,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

A Michigan jury convicted petitioner Taurae Canady of killing and robbing her apartment maintenance man and setting his van on fire. She was sentenced to life in prison, and her convictions and sentence were affirmed on direct appeal. Without a lawyer's assistance, Canady filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 that raises two grounds for habeas relief. First, Canady argues that the trial court violated her right to counsel by refusing to substitute counsel at her request and failing to adequately inquire into the attorney-client relationship. Second, she contends that her armed robbery conviction is unconstitutional because there was insufficient evidence to convict her of that crime. Because the state courts' rejection of these arguments reasonably applied controlling federal law, the Court will deny the petition.

I.

In December 2015, Canady and her brother, Taurus Canady, executed a plan to kill their apartment building maintenance man, Rafael Brown. Canady was tried before a jury in Wayne County, Michigan circuit court. The Michigan Court of Appeals adequately summarized the facts that came out at trial in its opinion on direct appeal:

Defendant and her brother, Taurus Canady, lived in an apartment building where Brown worked as a maintenance man.  The landlord had evicted the Canady family but they were squatting in their former apartment.  Taurus and defendant hatched a plan to earn some quick money to find a new place to live.  Taurus would lie in wait in an apartment occupied by Brown.  When Brown entered, defendant would hold the door closed while Taurus bludgeoned him to death with a sledgehammer.  On the evening of December 17, 2015, defendant and her brother executed this plan.  Defendant then removed Brown's phone and wallet from his person.  The pair wrapped Brown's body in tarps and dragged him to his work van.  Defendant stole expensive clothing and shoes, a radio, and a container of change from the van.  Defendant and Taurus drove the van to a vacant lot, doused it in gasoline, and set it on fire.  The duo [was] caught because Taurus bragged about the murder on Facebook and in a video he shared with friends.  Defendant gave a coat stolen from Brown to her teenaged stepsister who reported the crime.

*People v. Canady*, No. 333570, 2018 WL 341044 at *1 (Mich. Ct. App. Jan. 9, 2018).

Taurus Canady pleaded guilty to second-degree murder before trial.  The jury convicted petitioner Taurae Canady of first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a), armed robbery, Mich. Comp. Laws § 750.529, and fourth-degree arson, Mich. Comp. Laws § 750.75(1)(a)(i).  On June 7, 2016, the trial court sentenced her to a statutorily-mandated term of life in prison without parole for first-degree premeditated murder and concurrent prison terms of 15 to 30 years for armed robbery and 1 to 5 years for arson.

The Michigan Court of Appeals affirmed Taurae's convictions on direct appeal, *Canady*, 2018 WL 341044 at *3, and the Michigan Supreme Court denied leave to appeal, *People v. Canady*, 502 Mich. 904, 913 N.W.2d 290 (2018).  Taurae then filed the present petition asserting the following claims:

I.     Petitioner is entitled to a new trial for a violation of her right to counsel, where there was a breakdown in the relationship with counsel, she requested substitution of counsel prior to trial[,] and the trial judge refused the request without an adequate inquiry into the breakdown.

II.     The evidence was not legally sufficient to prove beyond a reasonable doubt that Ms. Canady committed an armed robbery, where the described thefts occurred after the victim had been killed, rendering the conviction constitutionally defective and necessitating reversal.

-2-

Pet. at 5, 7, 24 ECF No. 1, PageID.5, 7, 24.

The warden filed an answer contending that the petition lacks merit.

## II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). AEDPA provides a "highly deferential standard for evaluating state-court rulings[.]" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). That means federal courts give the state court "the benefit of the doubt," *ibid.*, applying that "statutorily prescribed deference," *Michael v. Butts*, --- F.4th ---, No. 21-5862, 2023 WL 1432076, at *5 (6th Cir. Feb. 1, 2023) (citing 28 U.S.C. § 2254(d); *English v. Berghuis*, 900 F.3d 804, 811 (6th Cir. 2018)).

A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was

so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review.  Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)).

A.

Canady first contends that the trial court violated her Sixth Amendment right to counsel by denying her request to substitute counsel and failing to conduct an adequate inquiry into the attorney-client relationship.

Two days before her trial date, Canady submitted a handwritten letter to the court requesting substitution of counsel.  She expressed dissatisfaction with her lawyer's representation and stated that she had "fired [her] lawyer many times," but he refused to leave the case.  ECF No. 1, PageID 71.  Canady further stated that she did not feel that defense counsel was "[trying] to fight for [her]" and that "he [did not] care about [her] life." *Ibid*.  Canady requested that the trial court allow her to hire a new attorney and reschedule the trial.  This was the first time Canady raised any issue to the trial court regarding counsel's representation.

The court received her letter on the day of trial and promptly conducted an inquiry into the matter.  Defense counsel stated that he and his client were not "fully in agreement . . . on how to proceed and whether she should proceed" with trial.  ECF No. 8-6, PageID 260.  The trial court then asked Canady to identify her reasons for requesting substitute counsel.  Rather than identifying a specific reason, Canady stated: "I feel like this right here is my life and he's not

represented me well.  Each and every time he comes to visit me it's a down talk . . . I just don't feel like he's representing me well." *Id.* at PageID 261.  The trial court further inquired whether the dispute involved witnesses to call or legal theories to advance.  *Ibid*.  Again, Canady did not provide specific examples, but stated: "Everything that I ask him to do he disagrees with." *Ibid*. The trial judge observed that Canady had several opportunities during the case when she appeared before the court to express her dissatisfaction with her lawyer.  *Id.* at PageID.262.  One instance had occurred just about two weeks earlier on April 29, 2016 at the final pretrial conference.  The parties discussed the conditions of a plea offer, and Canady was fully informed of the plea offer and her potential sentence if she rejected the plea.  ECF No. 8-5, PageID.227-230.  She had not raised a claim that counsel was ineffective during plea negotiations.  On May 16, 2016, the first day of trial, when the court addressed Canady's letter, the trial court then denied Canady's request, reasoning that it was untimely and failed to state a reason for asserting the right to new counsel.

Later that same day, the court revisited the issue when it formally admitted Canady's letter into evidence.  ECF No. 8-6, PageID 334-335.  At that time, the court permitted defense counsel to provide any additional remarks.  *Id.* at PageID 334.  Defense counsel stated that Canady did not raise any issue to the trial court during the final conference.  *Ibid*.  Defense counsel further stated that he and his client generally disagreed about the feasibility of her defense and that he did not think that the breakdown was severe enough to prevent him from adequately defending her.  *Ibid*. Canady now argues for the first time in her habeas petition that she and her lawyer had a legitimate difference of opinion regarding the fundamental trial tactics of investigating and calling alibi witnesses.

The Michigan Court of Appeals determined on direct review that Canady failed to show good cause to replace her appointed counsel.  The court concluded that Canady did not identify a

legitimate conflict or breakdown in the relationship because she expressed only a general dissatisfaction with her attorney. The court also rejected Canady's arguments that the trial court failed adequately to inquire into her concerns. *Canady*, 2018 WL 341044 at *2.

That ruling did not contravene or unreasonably apply federal law, and it was not an unreasonable determination of the facts. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "[I]mplicit in this guarantee is the right to be represented by counsel of one's own choice." *Linton v. Perini*, 656 F.2d 207, 208 (6th Cir. 1981). But "[t]he right to the assistance of counsel at trial does not guarantee that a criminal defendant will be represented by a particular attorney" whom he does not retain himself. *Serra v. Mich. Dep't of Corrs.*, 4 F.3d 1348, 1351 (6th Cir. 1993); *see also Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989) (holding that "impecunious defendants [do not] have a Sixth Amendment right to choose their counsel" and "have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts."). Simply stated, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006).

Canady's request for a new lawyer, however, was not for a new court-appointed lawyer. According to the record, she wanted to adjourn the trial so that her family could hire a lawyer for her. She had been represented by a court-appointed lawyer up to that point, and there is nothing in the record that suggests that she or her family had the wherewithal to hire a lawyer of their own. Nonetheless, she believes that she should have been given the chance to find a lawyer of her own choice. The problem, of course, is that her request came two days before the scheduled trial. When a defendant seeks substitution of counsel late in the case, she "must show good cause such as a

conflict of interest, a complete breakdown in communication or an irreconcilable conflict with [her] attorney in order to warrant substitution." *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985).

It is true that "a trial court, acting in the name of calendar control, cannot arbitrarily and unreasonably interfere with a client's right to be represented by the attorney he has selected." *Linton*, 656 F.2d at 209. But a trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 152 (internal and end citations omitted); *see also United States v. White*, 451 F.2d 1225, 1226 (6th Cir. 1971) ("A motion for new court-appointed counsel based upon defendant's dissatisfaction with his counsel previously appointed is addressed to the sound discretion of the trial court.").

Factors that courts may consider when reviewing substitution motions include "the timeliness of the motion; the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Martel v. Clair*, 565 U.S. 648, 663 (2012). When evaluating the extent of the conflict between the defendant and her attorney, a court may consider whether the conflict "was so great that it resulted in a total lack of communication preventing an adequate defense." *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001).

Here, Canady not only submitted the request for substitution of counsel on the eve of trial, she also failed to show that the conflict between herself and her attorney was so great that it resulted in a total lack of communication, which prevented an adequate defense. *Id.* at 556. The trial-court record contains no evidence that she raised any specific disagreement with counsel to the trial

court, including whether to investigate or call an alibi witness.  Moreover, the record does not suggest that the attorney-client relationship was fractured by counsel's unpreparedness for trial or counsel's failure to investigate a defense.  Canady merely expressed a general distrust of her attorney, because he gave a bleak assessment of the likelihood of success in her case if she were to go to trial.  But this case does not demonstrate that any disagreement with her attorney rose to the level of conflict necessary to justify new counsel.

Canady also contends that the trial court's inquiry was inadequate.  But she has not identified, and the Court has not found, controlling Supreme Court precedent that clearly establishes federal law governing the extent of the inquiry that a court must make when confronted with a criminal defendant's dissatisfaction with her attorney.  *See James v. Brigano*, 470 F.3d 636, 643 (6th Cir. 2006) (reversing the issuance of a writ of habeas corpus because the inquiry requirement was not clearly established in federal law).  Nevertheless, the court of appeals reasonably determined that the trial court conducted a sufficient inquiry.  The trial court inquired into the specifics of the alleged dispute and provided Canady with ample opportunity to explain the nature of her dissatisfaction.

Canady is not entitled to habeas relief on this claim.

## B.

Canady next argues that the evidence presented at trial was not sufficient to support her armed robbery conviction.  The respondent says that the Court need not reach this issue, because Canady's armed robbery sentence is entirely eclipsed by her life-without-parole sentence for first-degree murder.  Under the so-called "concurrent sentencing doctrine," a federal court may "decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction." *Winn v. Renico*,

175 F. App'x 728, 731 (6th Cir. 2006) (citing *United States v. Jeter*, 775 F.2d 670 (6th Cir. 1985)).

But a conviction nonetheless may carry adverse collateral consequences. *See Wilson v. Straub*,

185 F. Supp. 2d 769-70, 769 (E.D. Mich. 2002) (citing *Sibron v. New York*, 392 U.S. 40, 55

(1968)); *see also Spencer v. Kemna*, 523 U.S. 1, 8-9 (1998) (noting that the Court generally

presumes that a criminal conviction carries adverse collateral consequences beyond the sentence

imposed). Because it is unclear whether any adverse consequences may attach to the conviction,

the Court declines to invoke the concurrent sentencing doctrine.

Canady's theory is that no property was taken from Brown until after he was dead. Canady

reasons, therefore, that the record does not support all the elements of armed robbery, which

require, among other things, that property be taken from the person or in the presence of a live

person.

> The Michigan Court of Appeals was not persuaded by that argument.
>
> The prosecution presented evidence that defendant and Taurus planned their attack. Both before and after the offense, defendant expressed that her family needed money to find a new place to live. Defendant and Taurus made statements blaming Brown for their situation. They also planned for Taurus to use a sledgehammer, "a dangerous weapon," to kill Brown so they could rob him. Immediately after the killing, defendant took valuables from Brown's person and from his van. This evidence was sufficient to establish that defendant aided and abetted in Taurus's use of a dangerous weapon "in an attempt to commit the larceny." Stated differently, defendant and Taurus intended to beat and kill Brown in order to commit a larceny.
>
> Defendant contends that Brown was already dead when she stole his property and so could not be the victim of an armed robbery. However, armed robbery in Michigan involves more than a classic hold-up. A perpetrator may use the weapon at any time during the corpus of the crime, including before, during, or after the actual theft. See MCL 750.530(2). Here, defendant and Taurus used a dangerous weapon to incapacitate (actually kill) their victim so they could more easily steal his valuables. This falls within the statutory definition of an armed robbery.

*Canady*, 2018 WL 341044 at *3-4.

Again, that decision faithfully applied federal law, and it was not an unreasonable determination of the facts.  It is well established that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  Under the Due Process Clause, the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  A federal court reviewing a state court conviction under the habeas corpus statute that is "faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Cavazos v. Smith*, 565 U.S. 1, 7 (2011).

On direct appeal, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319.  For habeas corpus, that rubric "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *id.* at 324 n.16, and through the framework of 28 U.S.C. § 2254(d), *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).  The Sixth Circuit reads those cases as creating a gauntlet for state prisoners asserting a sufficiency-of-evidence challenge under the AEDPA: they must penetrate "two layers of deference to groups who might view facts differently" than a reviewing court on habeas review — the factfinder at trial and the state court on appellate review.  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Under Michigan law, the elements of armed robbery are that the defendant: (1) in the course of committing a larceny of any money or other property that may be the subject of a larceny, used

-10-

force or violence against any person who was present or assaulted or put the person in fear, and (2) in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. *People v. Chambers*, 277 Mich. App. 1, 7-8, 742 N.W.2d 610, 614 (2007); Mich. Comp. Laws §§ 750.529, 750.530. Michigan law defines larceny as "(a) a trespassory taking and (b) the carrying away (c) of the personal property (d) of another (e) with intent to steal that property." *People v. March*, 499 Mich. 389, 401, 886 N.W.2d 396, 404 (2016). The phrase "'in the course of committing a larceny' includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property." Mich. Comp. Laws § 750.530(2).

Canady was convicted of armed robbery for aiding and abetting her brother in the commission of Brown's murder and larceny of his property. To convict a defendant under an aiding and abetting theory, a prosecutor must show that: (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or knew that the principal intended to commit the crime at the time he or she gave aid and encouragement. *People v. Carines*, 460 Mich. 750, 757-58, 597 N.W.2d 130, 135 (1999); *see also People v. Robinson*, 475 Mich. 1, 6, 715 N.W.2d 44, 47-48 (2006); Mich. Comp. Laws § 767.39.

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of armed robbery beyond a reasonable doubt. During trial, Canady testified that she needed money to find a new place to live after being evicted from the apartment. Hailey Heard, Taurus's girlfriend, testified that Canady expressed a plan to "get

-11-

rid of the maintenance man," which included Taurus bludgeoning Brown with a sledgehammer while Canady would "hold the door shut so the maintenance man couldn't get out."  ECF No. 8-8, PageID 577-579.  Taurus and Canady executed that plan.  *Id*. at PageID 580-581.  Heard testified that soon after Taurus returned to their apartment, Canady went to Brown's apartment to confirm that he was dead.  *Id*. at PageID 583.  Canady then returned with a phone, a wallet, and keys, which she did not previously have in her possession.  *Ibid*.  Heard further testified that Canady went to Brown's car and returned with a coat, a radio, and money.  *Id*. at PageID 584.  Although Canady provided contrary testimony that she was not involved in the murder and robbery of Brown, the Court must presume that the jury resolved any conflicting evidence in favor of the prosecution.  *McDaniel*, 558 U.S. at 133.  The prosecution presented sufficient evidence that Canady committed armed robbery.  Canady is not entitled to habeas relief on this claim.

III.

None of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d).  The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson<br>DAVID M. LAWSON<br>United States District Judge

Dated:  February 7, 2023

-12-